UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X

LUCIA VLAD-BERINDAN,                                   :
                                                       :
                              Plaintiff,               :
                                                       :
                                                       :
              -against-                                :
                                                       :
NYC METROPOLITAN TRANSPORTATION                        :
AUTHORITY, MTA NEW YORK CITY                           :
TRANSIT, MTA NEW YORK CITY TRANSIT                     :
AUTHORITY, NEW YORK CITY TRANSIT,                      :
                                                       :
                              Defendants.              :

------------------------------------------------------------ X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 4/1/2016_____

14-CV-10304 (VEC) (FM)

AMENDED OPINION
AND ORDER

VALERIE CAPRONI, United States District Judge:

Plaintiff Lucia Vlad-Berindan initiated this action *pro se* against the MTA New York

City Transit, MTA New York City Transit Authority, and New York City Transit (collectively,

"Transit Authority Defendants" or "Defendants") as well as the "New York City Metropolitan

Transportation Authority," asserting that they violated her rights during an internship.  Vlad-

Berindan alleges that Defendants refused to hire her as a full-time paralegal on the basis of her

race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title

VII"), and retaliated against her in violation of Title VII, the Americans with Disabilities Act of

1990, 42 U.S.C. § 12101 *et seq.* ("ADA"), and the Age Discrimination in Employment Act of

1967, 29 U.S.C. § 621 *et seq.* ("ADEA"), for having filed a prior employment discrimination

complaint against them.  Moreover, she alleges that they failed to pay her the required minimum

wage during her internship in violation of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*

("FLSA"), and the New York Labor Law, N.Y. Lab. Law § 190 *et seq.* ("NYLL"), and

misclassified her as an independent contractor.  Lastly, she alleges that the Defendants defamed

her.  Defendants moved to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  Dkt. 16.

The Motion to Dismiss was referred to Magistrate Judge Frank Maas, who issued a thirty-four page Report and Recommendation ("R&R") recommending that this Court dismiss the claims for Title VII discrimination, NYLL minimum wage, misclassification, and defamation, as well as all claims against the "New York City Metropolitan Transportation Authority."  R&R at 32-33 (Dkt. 30).  The R&R also recommended that this Court deny the Motion to Dismiss the retaliation claim and the FLSA minimum wage claim.[1]

After a careful review of the R&R, the parties' submissions and the record, the Court agrees, in part, with the Transit Authority Defendants' objection and disagrees with all other objections.  Accordingly, the R&R is ADOPTED in full, except that the Plaintiff's FLSA minimum wage claim is DISMISSED with prejudice.

## DISCUSSION[2]

## I.   STANDARD OF REVIEW

"A district court reviewing a magistrate judge's report and recommendation 'may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.'"  *Seifts v. Consumer Health Sols. LLC*, No. 05-CV-9355 (ER) (LMS), 2015 WL 1069270, at *2 (S.D.N.Y. Mar. 11, 2015) (quoting 28 U.S.C. § 636(b)(1)(C)).  "When parties

---

[1]     Both parties objected to the R&R.  Defendants objected only to the recommendation that their Motion to Dismiss Plaintiff's FLSA claim be denied.  *See* Defs. Objections (Dkt. 36).  Plaintiff objected to the recommendation that her Title VII discrimination, NYLL minimum wage, misclassification, and defamation claims be dismissed.  *See* Pl. Objections (Dkt. 38).  Both parties replied to the other side's objections.  *See* Defs. Reply to Pl. Objections (Dkt. 39); Pl. Reply to Defs. Objections (Dkt. 42), and Plaintiff purported to file an amendment to her objections.  Dkt. 41.  The amended objections are substantively identical to her earlier objections and merely modify citations to the record.

[2]     The Court presumes the parties' familiarity with the factual and procedural background of the case, both of which are thoroughly set forth in the R&R.  R&R at 3-8.

2

object to the Report, the Court must make a *de novo* determination of those portions of the Report to which objections are made." *Petyan v. New York City Law Dep't*, No. 14-CV-1434 (GBD) (JLC), 2015 WL 4104841, at *1 (S.D.N.Y. July 2, 2015).  "[O]bjections may not be 'conclusory or general,' and parties may not simply regurgitate the original briefs to the magistrate judge." *Hernandez v. City of New York*, No. 11-CV-6644 (KPF) (DF), 2015 WL 321830, at *2 (S.D.N.Y. Jan. 23, 2015) (internal citation omitted).  In addition, "objections generally may not include new arguments that were not raised, and thus were not considered, by the magistrate judge." *Id.* (internal quotation marks omitted).  Although "[t]he objections of parties appearing *pro se* are 'generally accorded leniency' and should be construed 'to raise the strongest arguments that they suggest'" the objections still "'must be specific and clearly aimed at particular findings.'" *Petyan*, 2015 WL 4104841, at *1 (quoting *Milano v. Astrue*, No. 05-CV-6527 (KMW) (DCF), 2008 WL 4410131, at *2 (S.D.N.Y. Sept. 26, 2008); *Hernandez*, 2015 WL 321830, at *3).  Absent proper objections or if no objections are made, "the Court may adopt the report if 'there is no clear error on the face of the record.'" *Rosenfeld v. Michael C. Fina, Inc.*, No. 13-CV-04762 (GBD) (DCF), 2015 WL 5772021, at *1 (S.D.N.Y. Sept. 29, 2015) (quoting *Adee Motor Cars, LLC v. Amato*, 388 F. Supp. 2d 250, 253 (S.D.N.Y. 2005)); *see also Hernandez*, 2015 WL 321830, at *2.

## II.    Retaliation & All Claims Against the MTA

Neither party objects to the portions of the R&R recommending that the Court: (a) deny the motion to dismiss Plaintiff's retaliation claim under Title VII, the ADA, and the ADEA, R&R at 12-16; and (b) grant the motion to dismiss all claims against the MTA, sued as the "New York City Metropolitan Transportation Authority," *id.* at 2 n.1.  The Court has reviewed the R&R and has found no clear error.

To make out a *prima facie* case of retaliation, a plaintiff must plead facts that show: "'(1) [plaintiff's] participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action.'" *Littlejohn v. City of New York*, 795 F.3d 297, 315-16 (2d Cir. 2015) (quoting *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010)) (Title VII); *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002) (ADA); *Bucalo v. Shelter Island Union Free Sch. Dist.*, 691 F.3d 119, 129 (2d Cir. 2012) (ADEA).  The R&R correctly concluded that Plaintiff adequately alleged that she had engaged in a protected activity by filing a discrimination complaint against the Defendants in federal court,[3] that the Defendants knew about the protected activity, and that they took adverse action against her by not hiring her as a paralegal.  R&R at 15.  Plaintiff also sufficiently alleged a causal nexus between her protected activity and the adverse employment action by alleging that the Defendants refused to hire her after they discovered she had filed a federal lawsuit.  *Id.* at 15-16.  Accordingly, she has stated a claim for retaliation, and Defendants' motion to dismiss is denied.

The Court finds no clear error in the R&R's determination that the New York City Metropolitan Transportation Authority is not a proper party because no such entity exists.  The Magistrate Judge liberally construed the Complaint to be an attempt to sue the Metropolitan Transit Authority ("MTA"), a state entity.  Because Plaintiff did not intern for the MTA and the MTA is "legally separate" from the Transit Authority Defendants, R&R at 2 n.1, the Court adopts the unobjected-to recommendation that it be dismissed.

---

[3]     On January 27, 2014, Plaintiff sued some of these same Defendants in this Court.  *See Vlad-Berindan v. MTA New York City Transit, Marie Stanley Esq., Jean Doe Esq., & John Doe Esq.*, No. 14 CV 675 (RJS) (JCF) ("*Vlad-Berindan I*").  By order dated December 10, 2014, Judge Sullivan adopted Magistrate Judge Francis' Report and Recommendation and dismissed the complaint with leave to amend.  Plaintiff failed to amend the Complaint, and the case was closed on January 30, 2015.  R&R at 4-5.

### III.     Title VII Discrimination

The R&R recommends that the Defendants' motion to dismiss be granted as to the

Plaintiff's Title VII discrimination claim.  R&R at 17-21.  Plaintiff raises one appropriate

objection to that recommendation:  the Magistrate Judge erred in concluding that her complaint

did not adequately allege the fourth element of a *prima facie* claim, namely that the Defendant's

actions give rise to an inference of unlawful discrimination.  Pl. Objections at 2-4.[4]

The Objection alleged that "80% of [the employees in the office into which Plaintiff was

not hired] were African-Americans," and that her supervisor "of African-American color" did

not respond to her communications and delayed an evaluation and a letter of recommendation

after her internship.  Pl. Objections at 3-4.  Plaintiff's objections simply regurgitate allegations

and arguments raised to and considered by Magistrate Judge Maas.  R&R at 19-21 (considering

Plaintiff's allegations regarding the demographics of the office and regarding alleged hostility at

the end of her internship in deciding whether Defendants' actions give rise to an inference of

unlawful discrimination).  Plaintiff argues in her objection, apparently for the first time, that she

received her intern evaluation from an investigator who was "one of the few white person[s]" in

the law department, rather than from her "African-American supervisor," and that her supervisor

hated her because she was envious of Plaintiff's upcoming travel to South Africa.  Pl. Objections

at 3-4.  Plaintiff does not explain how those additional facts support an inference of racial

discrimination, and no rationale is apparent to the Court.  To the extent that they are simply more

support for her own previously-voiced opinion of a hostile workplace, they simply reiterate the

---

[4]     Plaintiff also objected to the R&R's Title VII recommendation on the grounds that (1) she is not required to establish a *prima facie* case of employment discrimination to survive a motion to dismiss; and (2) the Defendants did not contest that she has established the first three elements of a *prima facie* case for discrimination.  These "objections" are meritless because they essentially reiterate the R&R's conclusions.  The R&R expressly recognizes that "Vlad-Berindan is not required to establish a <u>prima facie</u> case of employment discrimination to survive a motion to dismiss," R&R at 18, and that "Vlad-Berindan has plausibly alleged the first three elements of a <u>prima facie</u> reverse discrimination claim," *id.* at 18.  This Court agrees with the R&R on both points.

arguments and allegations already considered and rejected by Magistrate Judge Maas. *Hernandez*, 2015 WL 321830, at \*2.

The R&R correctly concluded that Plaintiff has not pled facts that give rise to an inference of unlawful discrimination based on her race, color, or national origin.  Absent direct evidence, "[a]n inference of discrimination can arise from circumstances including, but not limited to, 'the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge.'"  *Littlejohn*, 795 F.3d at 312 (quoting *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 502 (2d Cir. 2009)).  Here, none of Plaintiff's allegations plausibly gives rise to an inference of discrimination based on her race, color or national origin.  Accordingly, the Court adopts the portion of the R&R recommending that Plaintiff's Title VII discrimination claim be dismissed.

## IV.      Failure to Pay Minimum Wage

Plaintiff contends that the Transit Authority Defendants failed to pay her the required minimum wage under the NYLL and the FLSA during her internship.  Compl. ¶¶ 85, 86.  The R&R recommended that this Court grant Defendants' Motion to Dismiss the NYLL claim, R&R at 22-28, but deny the Defendants' Motion to Dismiss the FLSA claim, *id.* at 28-31.  The Court adopts the R&R's recommendation as to the NYLL claim but disagrees with the R&R as to the FLSA claim.

### 1.      NYLL

Magistrate Judge Maas recommended Plaintiff's NYLL claim be dismissed because the Defendants are exempt from the NYLL.  Plaintiff objects to dismissal of her NYLL claim because: (1) the Transit Authority Defendants are not "a public subdivision but is a MTA's

6

contractor that presumable [sic] has only 34% public funded and not at least 51% public subsides [sic];" (2) it is unfair that Defendants be found exempt because "[n]obody should be exempt to pay minimum wage to its employees;" and (3) to hold them as exempt creates "a new form of slavery, a political slavery" in which a student internship could be considered a "punishment." Pl. Objections at 6-7. Because Plaintiff's last two objections are not aimed at particular findings in the R&R and are policy, not legal, arguments, they are not proper objections.

After a careful review of the R&R, Plaintiff's first objection is without merit; this Court concurs with the R&R's well-reasoned, thorough analysis. The NYLL definition of the term "employee" excludes "any individual who is employed or permitted to work: . . . by a federal, state or municipal government or political subdivision thereof." NYLL § 651(5)(n). Courts in this district have applied the analysis set forth in *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382 (1987), to determine whether a "public benefit corporation," such as the New York City Transit Authority ("NYCTA"), is a "political subdivision" exempt from the NYLL. *See, e.g.*, *Tongring v. Bronx Cmty. Coll. of City Univ. of New York Sys.*, No. 12 CIV. 6854 (ALC) (FM), 2014 WL 463616 (S.D.N.Y. Feb. 4, 2014); *Cromwell v. New York City Health & Hosps. Corp.*, 983 F. Supp. 2d 269 (S.D.N.Y. 2013); *Ali v. New York City Health & Hosps. Corp.*, No. 11 CIV. 6393 (PAC), 2013 WL 1195794 (S.D.N.Y. Mar. 25, 2013); *Drayton v. MetroPlus Health Plan, Inc.*, 791 F. Supp. 2d 343 (S.D.N.Y. 2011).

*Clark-Fitzpatrick* considered two factors in determining that the Long Island Rail Road, a public benefit corporation, is entitled to the same immunity from punitive damages as is enjoyed by a political subdivision: the essential government purpose that the entity serves and the public source of much of its funding. 70 N.Y.2d at 387-88. There is no question that the NYCTA serves an essential government purpose, and there is no question that it receives substantial

government funding.  Applying the *Clark-Fitzpatrick* analysis, this Court concurs with

Magistrate Judge Maas that NYCTA should be treated like a political subdivision for the

purposes of NYLL.

To the extent that Plaintiff's first objection—that the Transit Authority does not have at

least 51% public subsidies—is specifically targeting the R&R's finding that the amount of public

funding received by NYCTA is significant, R&R at 25, the Court reviews the record *de novo*.

Plaintiff cites no support for her implicit argument that an entity must be more than 50% public

funded in order to be a "political subdivision" under *Clark-Fitzpatrick,* and the case law does not

support her argument.  *See, e.g.*, *Cromwell*, 983 F. Supp. 2d at 274 (referencing public subsidies

of approximately $276 million; no indication what percentage of the total budget that sum

represents); *Drayton*, 791 F. Supp. 2d at 346-47 (referencing public grant and subsidies of more

than $348 million; no indication what percentage of the total budget that sum represents); *Clark-

Fitzpatrick*, 70 N.Y.2d at 388 (noting that the public benefit corporation "receives much of its

funding from taxpayer revenues" and that "at the time this action was commenced, 49% of [the

LIRR's] total expenses were financed from outside subsidies, most of which were derived from

public sources.").

Accordingly, the Court adopts the portion of the R&R recommending that the NYLL

minimum wage claim be dismissed.

### 2.      FLSA

Defendants object on two grounds to the R&R's recommendation that their Motion to

Dismiss the FLSA claim be denied.  Defendants specifically object to the R&R's conclusion that

the Plaintiff did not have a "civic, charitable, or humanitarian" purpose in completing her

internship and, therefore, FLSA's Volunteer Exemption does not apply.  *See* Defs. Objections at

2-4, 8-13; *see also* R&R at 28-31.  Defendants also argue that, regardless of the applicability of

the Volunteer Exemption, under *Glatt v. Fox Searchlight Pictures, Inc.*, 791 F.3d 376 (2d Cir.

2015), *opinion amended and superseded*, 811 F.3d 528 (2d Cir. 2016),[5] as a matter of law,

plaintiff was not an employee under the FLSA.  Defs. Objections at 14-19.[6]  Because the

Defendants' objections are specific and clearly aimed at particular findings, the Court reviews

these objections *de novo*.

     The Court agrees with the R&R that Defendants have not established that Plaintiff was

within the "Volunteer Exemption."  The so-called Volunteer Exemption to the FLSA provides:

> The term "employee" does not include any individual who volunteers to perform
> services for a public agency which is a State, a political subdivision of a State, or
> an interstate governmental agency, if—(i) the individual receives no
> compensation or is paid expenses, reasonable benefits, or a nominal fee to
> perform the services for which the individual volunteered; and (ii) such services
> are not the same type of services which the individual is employed to perform for
> such public agency.

29 U.S.C. § 203(e)(4)(A).  Although the FLSA does not define "volunteer," the United States

Department of Labor ("DOL") promulgated regulations providing that to qualify as a

"volunteer," a person must:

> (1) have a civic, charitable, or humanitarian purpose,
>
> (2) have not been promised or expect or receive compensation for the services
> rendered,

---

[5]     All subsequent citations to *Glatt* are to the amended opinion.

[6]     In their motion to dismiss, Defendants made this argument in passing as an alternative to their primary argument that FLSA was inapplicable because of the Volunteer Exemption.  Defs Mem. at 16-17 (Dkt. 19).  They argued at that time that *Glatt* was "[i]n the private sector context, not applicable here," but "[a]ssuming, *arguendo*, that [P]laintiff was subject to the more strenuous FLSA requirements that attach to interns working at for-profits entities [i.e., if the Volunteer Exemption does not apply], the internship program would still not be subject to the FLSA's requirements."  *Id.* at 16.  The R&R did not address this alternative argument.

     In their objection to this Court, they argue that even though *Glatt* arose in the private sector context, the scope of the primary beneficiary test described therein is "equally relevant to any FLSA claim."  Defs. Objections at 14.

(3) perform such work freely and without pressure or coercion, direct or implied, from the employer, and

(4) not be otherwise employed by the same public agency to perform the same type of services as those for which the individual proposes to volunteer.

*See Brown v. New York City Dep't of Educ.*, 755 F.3d 154, 162 (2d Cir. 2014) (citing 29 C.F.R. § 553.101(a), (c), (d)).

Defendants maintain that their "objection to the R&R in this case involves the application of the 'civic' purpose prong of the DOL factors to determine whether a person is an employee or a volunteer for a public agency," and urge this Court to adopt an objective standard. Defs. Objections at 12-13. To support an objective standard, Defendants rely on *Brown v. New York City Department of Education*, 755 F.3d 154 (2d Cir. 2014). Although the Defendants concede that the court in *Brown* did not ultimately decide whether a subjective or objective standard should apply to the "'civic, charitable, or humanitarian' regulatory prong," they argue that the Court's analysis supports adopting an objective standard. Defs. Objections at 11. Defendants note that the *Brown* court adopted an objective standard to assess the plaintiff's expectation of compensation. *Id*. Moreover, they note that the court quoted Fifth Circuit precedent in which that court took an objective approach in reviewing the "civic" purpose prong. *Id*. The Fifth Circuit "look[s] to the 'objective facts' rather than the 'personal motivations behind the provision of services' and conclude[s] that 'anyone who performs public services without the expectation of compensation, and with no tangible benefits for himself, is volunteering for civic, charitable and/or humanitarian reasons.'" *Brown*, 755 F.3d at 163 n.6 (quoting *Cleveland v. City of Elmendorf, Tex.*, 388 F.3d 522, 528-29 (5th Cir. 2004)).

In light of this precedent, Defendants argue that, because Plaintiff interned with a public agency, "by definition, the brief internship had a civic purpose," and so did Plaintiff. Defs.

Objections at 8.  The Court disagrees and need not determine whether the "civic" purpose prong must be assessed using an objective or subjective standard.  This case is clearly distinguishable from *Brown*.  In *Brown*, the plaintiff acknowledged volunteering for civic and humanitarian reasons; he agreed to work as a mentor for high school students because he wanted "to help high school students by showing that people like himself genuinely cared about them."  *Brown*, 755 F.3d at 163-165.  Moreover, the plaintiff in *Brown* received no academic credit for his volunteer efforts.  Here, Plaintiff affirmatively alleged that she needed the internship with the Defendants to satisfy her school's mandatory internship requirement, and she does not otherwise allege that she harbored any civic, charitable, or humanitarian motive for volunteering to work at the Transit Authority.  Compl. ¶ 34.  In fact, Plaintiff disavowed any motive to volunteer.  S*ee also* Pl. Aff. ¶ 20 ("Plaintiff reiterates that she was never told that she will be a volunteer, nor her school offers 'volunteers' as interns, nor she ever knew or stated that she wants to be a volunteer for the defendant New York City Transit.").

Additionally, even under the objective standard that Defendants urge, Defendants have failed to establish that Plaintiff had a "civic, charitable, or humanitarian" purpose for volunteering.  Defendants seem to concede in their objections that "Plaintiff did not only want the unpaid internship, she declared she needed the unpaid internship in order to fulfill graduation requirements."  Defs. Objections at 12 (citing Compl. ¶¶ 9, 34).  By providing Plaintiff the requested internship from which to gain credit for her bachelor's degree, the Defendants most certainly bestowed a "tangible benefit" on Plaintiff and, therefore, even objectively, her internship was not for a "civic" purpose.  *Brown*, 755 F.3d at 163 n.6.  Accordingly, the Court agrees with the R&R that the Defendants failed to establish that the work performed by Plaintiff during her internship was subject to the FLSA's Volunteer Exemption.  R&R at 31.

Nevertheless, the Court finds that Plaintiff was not an "employee" under the FLSA and, accordingly, her FLSA claims must be dismissed.  In the context of for-profit, private employers, *Glatt v. Fox Searchlight Pictures, Inc*. considered the circumstances under which an unpaid intern must be deemed an "employee" under the FLSA and, therefore, compensated for his or her work.  811 F.3d 528, 533-38 & n.2 (2d Cir. 2016).  Defendants urge this Court to read *Glatt* broadly to apply to public sector, unpaid interns, such as Plaintiff.  Defs. Objection at 14.

As to interns working in the private sector, the court in *Glatt* embraced a primary beneficiary test that focuses on three considerations: (1) "what the intern receives in exchange for his work," (2) "the economic reality . . . between the intern and the employer," and (3) whether "the intern enters into the [intern-employer] relationship with the expectation of receiving educational or vocational benefits that are not necessarily expected with all forms of employment."  *Glatt*, 811 F.3d at 536.  In addition to the three features of the primary beneficiary test, the court "articulated a set of non-exhaustive factors to aid courts in determining whether a worker is an employee for purposes of the FLSA."  *Id*. (citations omitted).  Among these factors are:

> 1. The extent to which the intern and the employer clearly understand that there is no expectation of compensation. . . .
>
> 2. The extent to which the internship provides training that would be similar to that which would be given in an educational environment, including the clinical and other hands-on-training provided by educational institutions.
>
> 3. The extent to which the internship is tied to the intern's formal education program by integrated coursework or the receipt of academic credit.
>
> 4. The extent to which the internship accommodates the intern's academic commitments by corresponding to the academic calendar.
>
> 5. The extent to which the internship's duration is limited to the period in which the internship provides the intern with beneficial learning.

6. The extent to which the intern's work complements, rather than displaces, the work of paid employees while providing significant educational benefits to the intern.

7. The extent to which the intern and the employer understand that the internship is conducted without entitlement to a paid job at the conclusion of the internship.

*Id*. at 536-37.  The Second Circuit noted that all of the circumstances should be weighed and balanced, that no one factor is dispositive, and that every factor need not point in the same direction.  *Id.* at 537.  "[T]he touchstone of this analysis is the 'economic reality' of the relationship."  *Id.*

If *Glatt*'s primary beneficiary test applies to Plaintiff's internship with the NYCTA, there is no question that she was an intern, not an employee.  That conclusion is clear even though some of the *Glatt* factors point towards Plaintiff being an employee.

The sixth factor—the extent to which the intern's work complements, rather than displaces, the work of paid employees—points toward Plaintiff being an employee.  Plaintiff asserts that as an intern she replaced a paralegal who had quit.  Compl. ¶¶ 41, 67; Pl. Aff. ¶¶ 8(u), 18, Pl. Reply to Defs. Objections at 5.  Further, Plaintiff claims that "[u]p to [her last day of work], the paralegal position of [the] former paralegal  . . . was still open . . . ."  Compl. at ¶¶ 50, 68.  The seventh factor—the extent to which the intern and the employer understand that the internship is conducted without entitlement to a paid job at the conclusion of the internship— further weighs in favor of finding Plaintiff was an employee.  Plaintiff alleges that she believed the internship was to be followed by a paid job.  According to Plaintiff, when she interviewed with the Defendants, they offered her a paid paralegal contractor position upon completion of her internship and she accepted, with the caveat that she imposed that she needed to do the internship first before beginning a job as a paralegal.  *See* Compl. ¶¶ 38, 51; Pl. Reply to Defs. Objections at 7.

Nevertheless, those factors are outweighed by the clear economic reality of the relationship: the undisputed purpose of Plaintiff's internship was to fulfill an academic requirement for her bachelor's degree.  The third factor—the extent to which the internship is tied to the intern's formal education program—weighs strongly in favor of categorizing Plaintiff as an intern.  Plaintiff initially sought an internship with the Defendants because of an academic requirement.   Compl. ¶¶ 64-66.  Plaintiff alleged that an internship was required to obtain a degree and that her internship instructor told her that she needed to do the internship with a corporation rather than with a law firm.  Compl. ¶¶ 34-35.  Moreover, and most important, Plaintiff alleges that Defendants offered to consider her for a paid paralegal position but she explained to the Defendants that she first needed to complete a 120 hour mandatory internship for academic credit.  Compl. ¶¶ 38, 66; Pl. Aff. ¶ 8 (i), (l); Pl. Reply to Defs. Objections at 4 ("Only at Plaintiff [sic] special request Defendants offered her the internship before employment").   Based on that conversation, according to the Plaintiff, Defendants interviewed her for and then offered her an internship and a subsequent $10/hour paralegal position.  Compl. ¶¶ 40, 59; *see also* Pl. Aff. ¶ 8(l) ("Plaintiffs were [sic] told that [Defendants] decided to offer her an internship position for 120 hours, at least 3 days a week, at least two consecutive days, and at least 7 hours work/day that would follow by paralegal-contractor position and plaintiff accepted").[7]  In short, while the Defendants no doubt benefited from her assistance, Plaintiff was clearly the primary beneficiary of the internship with the Defendants.

---

[7]       Plaintiff asserts that Defendants offered to pay her $10.00 per hour in the paralegal position without any specification whether the internship itself would be paid or unpaid.  Compl. ¶ 43; Pl. Aff. ¶ 8 (l).  Plaintiff asserts in her reply to Defendants' objections, however, that she "expected to be paid by Defendants . . . ."  Pl. Reply to Defs. Objections at 8.  Although a court construes a *pro se* plaintiff's papers liberally, Plaintiff herself concedes that, regardless of her expectation, Defendants did not specify whether the internship itself would be paid.  Accordingly, the Court does not view the first *Glatt* factor—the extent to which the intern and the employer clearly understand that there is no expectation of compensation—as weighing in Plaintiff's favor.

Plaintiff additionally argues that she "did not learn anything during the internship," Pl. Reply to Defs. Objections at 4, 8; Pl. Aff. ¶ 18, and that the Defendants gave her a "work time card," email address, phone number extension, and access to all their documents, Pl. Reply to Defs. Objections at 4-5; Pl. Aff. ¶ 8(p)-(t).  She argues that, taken together, these facts suggest that she was an "employee."  Pl. Reply to Defs. Objections at 4-5.  It is unfortunate, if true, that Plaintiff learned nothing during her internship but even if that is true, it does not erase the fact that she received credit toward her degree by virtue of the internship.  The facts that she was assigned an email address and a phone extension and obtained access to Defendants' documents are not dispositive or even persuasive on the question of whether she was an employee or an intern.  It is commonplace to assign email addresses and to provide telephone access to both interns and employees; access to documents was necessary whether she was employed as a paralegal or working as an intern in furtherance of a paralegal degree.[8]  Accordingly, these arguments do not alter the Court's finding that Plaintiff was the primary beneficiary of the internship and, therefore, would not be an "employee" for purposes of the FLSA if *Glatt* applies.

 As the Second Circuit noted in *Glatt*, the FLSA itself is unhelpful in defining the line between employees and interns inasmuch as it defines an "employee" as an "individual employed by an employer."  29 U.S.C. § 203(e)(1).  Public employers are generally included within the scope of the definition of "employers," *see id.* § 203(d), and public employers further benefit from the availability of the Volunteer Exemption discussed above.  The question then becomes whether individuals who are interns for public sector employers but do not fit within the Volunteer Exemption are covered by the FLSA.

---

[8]     The Court further notes that Plaintiff's "work time card" specifically labels her as a "Paralegal Intern."  *See* Pl. Aff. (Dkt. 24) Ex. 17.

The parties have pointed the Court to no precedent precisely on point, and the Court has found none.  On the one hand, the fact that there is a Volunteer Exemption for public sector entities could be read to suggest that is the only category of public sector "worker" that Congress intended to exempt from the protections of FLSA.[9]  On the other hand, that would be an extreme decision, and one that could throw into disarray many public sector internship programs.  This Court can see no reason why the framework established by *Glatt* is not equally applicable to a public sector intern.[10]  Accordingly, this Court holds that *Glatt* may be applied to public sector interns, like Plaintiffs, who do not fall within the Volunteer Exemption.

Accordingly, Plaintiffs' FLSA minimum wage claim is dismissed.

---

[9]     The Court found one case, *Reich v. Parker Fire Prot. Dist.*, 992 F.2d 1023, 1025 (10th Cir. 1993), involving public sector trainees but found none involving public sector interns.  As the Second Circuit did in *Glatt*, the Tenth Circuit started its analysis with *Walling v. Portland Terminal Co.*, 330 U.S. 148 (1947), when determining whether the firefighter trainees at issue were "employees" covered by FLSA.  What is significant, however, is that the Secretary of Labor, who was the Plaintiff, argued that the trainees were "employees," but did not argue that any non-paid public sector worker who does not fit within the Volunteer Exemption is necessarily an employee covered by FLSA.  While that is not overwhelming support, it is some support for the proposition that Congress did not intend the Volunteer Exemption to be the only exemption for unpaid public sector workers, whether they be trainees or interns.

[10]     The Second Circuit briefs in *Glatt* from the Defendant and the DOL limited their arguments to interns who were working for private sector, for profit employers, indicating that public sector interns were subject to the FLSA Volunteer Exemption, 29 U.S.C. § 203(e)(4)(A).  The DOL, Wage and Hour Division's Fact Sheet #71 referenced in *Glatt* is explicitly limited to "for-profit" private sector employers; it references the FLSA "special exception" for individuals who volunteer to perform services for a state or local government agency.

An analogous situation to Plaintiff's exists in clinical internships required for academic credit for certain medical professionals.  *See Schumann v. Collier Anesthesia, P.A.*, 803 F.3d 1199, 1213 (11th Cir. 2015) (discussing that "the mere fact that an employer obtains a benefit from providing a clinical internship does not mean that the employer is the 'primary beneficiary' of the relationship" when "the modern internship as a requirement for academic credit and professional certification and licensure" means that "the students seeking the internships—as opposed to a particular company's business requirements—drive the need for the internships to exist."); *Solis v. Laurelbrook Sanitarium & Sch., Inc.*, No. 1:07-CV-30, 2009 WL 2146230, at *5 (E.D. Tenn. July 15, 2009) ("[A] student who works primarily for his own advantage is not performing work within the meaning of the FLSA."), *aff'd*, 642 F.3d 518 (6th Cir. 2011).

V.     **Misclassification**

The R&R recommended that this Court decline to consider Plaintiff's misclassification claim because Plaintiff has failed to establish any entitlement to compensation during her internship and therefore the issue is not ripe for resolution. R&R at 32. Plaintiff objects to dismissal of her misclassification claim arguing that "it is not premature for her Misclassification Claim because she had proven the employee versus an independent contractor test [sic]." Pl. Objections at 8. She claims she performed work under a fixed schedule, was directly supervised, complied with instructions, and was provided resources to perform her services at a set rate of pay. Pl. Objection at 8. Moreover, she argues that while she "worked for Defendants [she] was an Employee and not a Contractor Consultant . . . as Defendants hire paralegals, not only plaintiff but other paralegals as well." *Id.* at 8.

This Court agrees with the R&R that Plaintiff's misclassification claim must be dismissed. R&R at 32. As Defendants' argue in their reply to Plaintiff's objections, this entire case began with Plaintiff seeking an internship for school credit, not employment. Defs. Reply to Pl. Objections at 8. The Court agrees—Plaintiff's misclassification claim is incomprehensible given the fact that her claims of unlawful retaliation and discrimination are premised on Defendants' decision *not* to hire her as a paralegal. *See* Compl. ¶¶ 74, 82. That Plaintiff alleges she had a fixed schedule, was supervised, complied with instructions, and was given resources to perform work, Pl. Objections at 8, does not transform an internship into an employment position, nor support her allegation that she was an employee misclassified as an independent contractor. Accordingly, the Court adopts the portion of the R&R recommending that the misclassification claim be dismissed.

## VI.     Defamation

Plaintiff objects to the R&R's recommendation that her defamation claim be dismissed arguing that she "believes that she has a 'better pleading' to prove Defendant's Defamation practice."  Pl. Objection at 4.  Objections are improper, however, to the extent that they "include new arguments that were not raised, and thus were not considered, by the magistrate judge." *Hernandez*, 2015 WL 321830, at *2 (internal quotation marks omitted).   "[I]t is established law that a district judge will not consider new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not." *Sci. Components Corp. v. Sirenza Microdevices, Inc.*, No. 03-CV-1851(NGG) (RML), 2006 WL 2524187, at *2 (E.D.N.Y. Aug. 30, 2006).  In short, Plaintiff cannot now introduce a "better pleading."

This Court finds no clear error in the R&R's analysis.  In Plaintiff's Complaint, the word defamation appears once.  Compl. ¶ 83 ("Plaintiff was refused three times for a Letter of Recommendation she asked from her African American supervisor. This supervisor refusal is not only a defamation against Plaintiff, but is also a prove [sic] of hate toward Plaintiff."). Magistrate Judge Maas recommended dismissing that claim because a "failure to write a timely letter of recommendation obviously does not constitute a false statement" and Plaintiff has not alleged the publication of a false statement.  R&R at 19 n.5.  To state a claim for defamation under New York law, the plaintiff must allege "'(1) a false statement about the [complainant]; (2) published to a third party without authorization or privilege; (3) through fault amounting to at least negligence on [the] part of the publisher; (4) that either constitutes defamation per se or caused 'special damages.'"  *Fuji Photo Film U.S.A., Inc. v. McNulty*, 669 F. Supp. 2d 405, 411 (S.D.N.Y. 2009) (quoting *Gargiulo v. Forster & Garbus, Esqs.*, 651 F. Supp. 2d 188, 192

(S.D.N.Y. 2009) (internal quotation marks omitted)).  The failure of Plaintiff's supervisor to write a timely letter of recommendation does not constitute a false statement.  Accordingly, the Court adopts the portion of the R&R recommending that the defamation claim be dismissed.

## VII.    Leave to Replead

Magistrate Judge Maas recommended that Plaintiff's claims against the MTA as well as her NYLL minimum wage and defamation claims be dismissed without leave to replead.  R&R at 32-33.  The Court adopts the R&R's recommendation as to Plaintiff's claims against the MTA as well as her NYLL minimum wage claims because, as the R&R notes, the problem with those claims is substantive and cannot be cured with a better pleading.  Although a district court should read a *pro se* complaint liberally and generally not dismiss the complaint without granting the plaintiff leave to amend at least once, leave to amend is unnecessary when the problem with the claim is substantive.  *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *Rudaj v. Treanor*, 522 F. App'x 76, 78 (2d Cir. 2013).  For the same reason, Plaintiff's FLSA claim (which the R&R recommended not dismissing) will be dismissed without leave to replead.  Based on the facts alleged, the problem with her FLSA claim is substantive and cannot be cured by a better pleading.

With regard to the R&R's recommendation that Plaintiff's defamation claim be dismissed without leave to replead, Plaintiff objects asserting that she has a "better pleading."  Pl. Objection at 4.  Plaintiff's "better pleading," as set forth in her objection, *id.* at 4-5, still fails to state a claim, even under the liberal pleading standards of Rule 8 of the Federal Rules of Civil Procedure.  Plaintiff's "better pleading" is that her supervisor eventually wrote a letter of recommendation and Plaintiff "believes The Recommendation itself is also defamatory, but, because was confidential, the content of the letter is to be determined if contain [sic] false

statements about plaintiff via discovery." Pl. Objection at 5.  Other than her unadulterated

speculation regarding the contents of the letter, Plaintiff offers no factual allegations to support

her belief that the letter contained false statements of fact that were defamatory.  "Even under the

more lenient federal standard, . . . the amended complaint must at least identify the allegedly

defamatory statements . . . ." *Neal v. Asta Funding, Inc.*, No. 13 CV 2176 (VB), 2014 WL

3887760, at *3 (S.D.N.Y. June 17, 2014) (internal quotation marks and citation omitted),

*reconsideration denied,* No. 13 CV 2176 (VB), 2014 WL 3891239 (S.D.N.Y. June 27, 2014); *see

also Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) ("Even in a *pro se* case, . . .

threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice." (internal quotation marks and citation omitted)).  Because Plaintiff's

proffered "better pleading" would not state a claim either, granting leave to amend would be

futile.  Accordingly, the defamation claim is dismissed without leave to replead.

　　　　With regard to Plaintiff's Title VII claims, the R&R notes that Plaintiff was afforded

leave to replead her race and national origin claims in *Vlad-Berindan I* and she did not do so,

instead electing to bring this nearly identical action.  R&R at 33 n.8.  This Court agrees with the

Magistrate Judge that Plaintiff has, in effect, already been afforded an opportunity to replead her

Title VII discrimination claims.

　　　　Accordingly, Plaintiff's claims against the MTA, as well as her Title VII, defamation,

NYLL minimum wage claims, and FLSA claims will all be dismissed with prejudice, without

leave to replead.

## CONCLUSION

　　　　This Amended Opinion and Order shall supersede the Court's prior Opinion and Order at

Docket Entry 43.  For the reasons set forth above, the R&R is ADOPTED in full except that the

FLSA failure to pay minimum wage claim is DISMISSED against the Transit Authority

Defendants with prejudice and without leave to replead.  The Clerk of the Court is respectfully

directed to close Docket Entry 16.  The Clerk of the Court is further directed to mail a copy of

this Order to Plaintiff and to note service on the docket.


**SO ORDERED.**


**Date:  April 1, 2016**
**New York, NY**          _____
                    **VALERIE CAPRONI**
                    **United States District Judge**